

**SO ORDERED.**
**SIGNED this 9th day of August, 2012**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| In re: | No. 09-16854 |
| | Chapter 7 Debtor |
| LORETTA J. HART, | |
|     Debtor; | |
| SOUTHERN HERITAGE BANK | |
|     Plaintiff, | |
| v | Adversary Proceeding |
| | No. 10-1304 |
| LORETTA J. HART, | |
|     Defendant. | |

1

**Memorandum**

Southern Heritage Bank ("Bank"), the plaintiff in the above styled action, filed a Motion to Amend Final Judgment entered on May 20, 2011. [Doc. No. 39].[1] This motion was argued on May 31, 2012. The order in question determined the amounts owed by Loretta Hart, the debtor and defendant in this proceeding ("Debtor"), on certain debts owed to the Bank. In the order, the court found that those debts were nondischargeable. The Bank now seeks to have the order amended to include a judgment for those amounts. Based on the arguments of counsel, the record of the dischargeability trial conducted on April 6, 2011, and the briefs filed in support and in opposition to the motion, including post hearing exhibits, the court finds that it made a final determination on the Debtor's ability to raise her own counterclaims, to the extent that she had any. The court further finds that its failure to enter judgments in favor of the Bank was a mistake that should be corrected under Rule 60 of the Federal Rules of Bankruptcy Procedure, as made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9024. For the reasons given below, the court will GRANT the Bank's motion and amend its prior order.

**I.    Facts**

**A.    Procedural Background**

On February 17, 2010, the Bank filed this adversary proceeding objecting to the discharge of the Debtor. The court held the trial on April 6, 2011. Following the trial, the court signed an order on May 19, 2011 which was entered on May 20, 2011 finding that four debts owed to the Bank were not dischargeable. [Doc. No. 28, Order ("May 20 Order")]. The four debts owed to the Bank were described in the May 20 Order as follows:

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 10-1304, unless otherwise noted.

1. The Defendant's debt owed to the Bank on the guaranty of the Optimum Loan in the amount of $953,375.96. To the extent that any portion of the debt owed to the Bank is based on the Debtor's guaranty of the obligations of Optimum Staffing, Inc., this order is without prejudice to any counterclaims or offsets alleged by Optimum Staffing, Inc. in other litigation that may ultimately reduce the amount owed by Defendant pursuant to her guaranty of the obligations of Optimum Staffing, Inc.

2. The Defendant's debt on the Personal Loan in the amount of $12,765.66.

3. The Defendant's debt on the Daisy Loan in the amount of $177,208.

4. The Defendant's debt on the Residence Loan in the amount of $145,151.33.

May 20 Order at 2.

### B.   The Parties' Positions

The May 20 Order did not expressly grant a judgment in favor of the Bank on account of each debt, but it did make specific findings of the amount of each debt which remained outstanding at the time of the trial. The Bank had asked the court for a judgment in its complaint to resolve issues that have now arisen regarding counterclaims which the Debtor is seeking to assert. It asks the court to amend the May 20 Order to include a judgment against the Debtor for the specific amounts pursuant to Federal Rules of Bankruptcy Procedure 9024 on the basis that it was a mistake for the court to have omitted a judgment in the May 20 Order. The Bank acknowledges that any judgment granted by the court will be subject to adjustment in an amount equal to the amount of any judgment obtained by Optimum Staffing, Inc. ("Optimum"), the principal obligor on the Optimum Loan guaranteed by the Debtor. If Optimum is successful, the Bank would reduce Optimum's obligation to the Bank on the Optimum Loan, and the Debtor's guaranty obligation would be reduced by an equal amount.

The Debtor has responded and opposes any amendment on four grounds. First, she contends that no evidence has been presented to support the Bank's contention that the court made a mistake by omitting a judgment and, consequently, the Bank has not carried its burden

3

under Rule 9024. Second, she asks that the court abstain and allow the Bradley Court Chancery Court to adjudicate the Bank's claim and the Debtor's and Optimum's counterclaims. Third, she argues that the Bank should be estopped from seeking a judgment from this court because the Bank has filed two new lawsuits in Bradley County, Tennessee seeking a judgment against the Debtor. She argues that if the Bank is pursuing relief in Bradley County, then, as the defendant, she should be allowed to raise any counterclaims and defenses specific to her in response to those complaints. Finally, she has also raised the issue of the court's jurisdiction to enter a judgment which would cut off claims which the Debtor contends she has against the Bank based on the United States Supreme Court's ruling in *Stern v. Marshall,* 131 S.Ct. 2594 (2011).

### C.    The Optimum Chancery Litigation

At the time of the dischargeability trial, and even before the Hart bankruptcy case was filed, there was litigation pending in the Chancery Court of Bradley County, the case of *Southern Heritage Bank v. Optimum Staffing, Inc., Loretta J. Hart and Jerry Scheib*, Doc. No. 09-022. ("Chancery Litigation"). The Debtor was the principal of Optimum, but her exact position and ownership of the corporation were issues addressed in the dischargeability trial. The Chancery Litigation was stayed by the bankruptcy filing by Optimum, Bankruptucy Case No. 09-15008 on August 10, 2009 and the bankruptcy filing by the Debtor on October 22, 2009. Both bankruptcy cases are now closed. *In re Hart*, Bankr. Case No. 09-16854, Doc. No. 163, May 4, 2012; *In re Optimum Staffing*, Bankr. Case No. 09-bk-15008, Doc. No. 43, May 22, 2012. The Chancery Litigation remained dormant throughout the bankruptcy cases. Neither Hart's nor Optimum's trustee pursued claims against the Bank. Whatever claims were held by the estate would have been revested in each debtor upon the closing of the case. 11 U.S.C. § 554(c). Since both cases have been closed, the stay imposed by 11 U.S.C. § 362(a) has expired, and there is no longer any

4

need for an order lifting the stay. 11 U.S.C. § 362(c)(2). Optimum did not obtain a discharge in its Chapter 7 case because it is not an individual. 11 U.S.C. § 727(a)(1). As to the debts owed to the Bank, the Debtor did not receive a discharge of the four debts pursuant to the court's May 20 Order, the largest of which was the Debtor's guaranty of Optimum's debt to the Bank. Both parties informed the court at the hearing on the Motion to Amend that the Chancery Litigation has resumed, and an issue has arisen over whether this court intended to enter a judgment in favor of the Bank that would now preclude the Debtor from raising any counterclaims against the Bank in the Chancery Litigation or in two new lawsuits filed by the Bank in the Chancery Court of Bradley County, Tennessee.

### D.    The Debtor's Failure to Assert Her Own Counterclaims and Affirmative Defenses

The Debtor did not raise any affirmative defenses to the Bank's loans in her answer to the Bank's dischargeability complaint. [Doc. No. 7]. In her trial brief, the Debtor relied on denials of the Bank's allegations that she provided it with false financial statements or made material misrepresentations on which the Bank relied. There is one sentence about "some very questionable documents which have been filed with this court on various claims of this creditor." [Doc. No.19, Debtor's Trial Brief at 2]. However, she never amended her answer to assert either a counterclaim or to raise an affirmative defense of setoff. The Debtor's witness list had no witness identified to testify about counterclaims or offsets. One witness was identified as a handwriting expert, but the issue of the authenticity of anyone's handwriting or signature was not discussed in the trial brief.

The Debtor first raised the issue of counterclaims shortly before trial when she provided the Bank with her trial exhibits. The Bank filed a motion in limine on April 4, 2011, two days prior to the trial date of April 6, 2011. The motion sought to have the court limit the proof that

5

could be taken on the set off issue based on the fact that the affirmative defense had not been raised. Motion in Limine at 2, Doc. No. 24. The motion was further supplemented by the Bank with a memorandum of authorities which supported the Bank's contention that the defense was lost if not raised in a timely manner; that such claims were compulsory counterclaims which the Debtor had failed to raise; and finally, that to the extent that the set off claim was a claim of Optimum's rather than the Debtor's, the Debtor could not raise that defense in a case in which Optimum was not a party and where the Debtor had waived such defenses in the guaranty which she signed. [Doc. No. 25, Supplemental Document in Support of Motion in Limine at 3].

The Bank's counsel also represented to the court that the Debtor had asserted no counterclaim of her own against the Bank in the Chancery Litigation. The Bank's counsel argued that the Debtor had failed even to list claims against the Bank as property of the estate. Debtor's counsel countered that the answer denied the debt, and his client had never been asked in discovery for the basis of the denial. He further pointed out that the Debtor's schedules had been amended to reflect the counterclaim.

Prior to ruling on the motion in limine, the court reviewed the record and found that the Debtor had filed a Schedule B amendment which referenced a "[c]ounterclaim in Case # 09-023." [Bankr. Case No. 09-16854, Doc. No. 78, Amended Schedule B at 2, Question 18]. The Schedule B Amendment was filed on February 23, 2010. The Schedule does not disclose the party against whom the counterclaim exists and does not reflect the same case number as the Chancery Litigation. Nor does it provide the court with information regarding where "Case # 09-023" is pending. The value of the counterclaim is listed at $100,000. *Id.*

The Bank also argued that whatever claims the Debtor had were property of the estate and were available for her trustee to pursue. The Bank's counsel stated that the Bank did not

object to any ruling on its motion in limine being subject to any further proceeding asserting claims against the Bank by the trustee in the case. To the extent that there were any claims which would have provided an affirmative recovery for the debtor, that recovery would be part of the estate and the trustee would have been the appropriate party to bring the action.

The court granted the motion in limine and prohibited the Debtor from raising counterclaims against the Bank. The court also prohibited any evidence on the counterclaims of Optimum, finding those counterclaims to be irrelevant to a decision on the dischargeability of the Debtor's obligations to the Bank. The court stated on the record,

> "I have had an opportunity to review the pleadings which were made in the main case and to review the waiver. In reviewing the documents, I can find no assertion of an affirmative defense, and specifically no assertion of a defense of set off. With respect to references in the main case, the court finds that they are at best cryptic if they were intended to put parties on notice that there was a claim against Southern Heritage Bank…. Doc. No. 78, which is the amended schedule, does not mention the defendant or the nature of the counterclaim. Doc. No. 100 filed by Mr. Johnson indicates that the Trustee is going to pursue an asset worth an estimated $300,000, but provides no information about the nature of the asset – whether it's a claim against another party. Southern Heritage is not mentioned anywhere in that pleading. The court also notes that the motion in limine was served on Mr. Johnson and the trustee has not made any effort to intervene in this case nor has he filed any response to the Motion.
>
> Based on the argument, it does not appear that -- the court has not heard anything that indicates the [existence of] set off or cause of action that would reduce the debt that belongs specifically to Mrs. Hart. She is merely the beneficiary if Optimum is successful in asserting [its] defense so that her amount would be reduced. To the extent that the Court does find that any of the debts today are nondischargeable, the court's finding will be subject to that the debt, depending on what the proof shows, will be subject to being reduced by any successful counterclaim which may be brought in the Bradley County Litigation to prevent the Bank from having any sort of double recovery.
>
> The court is prepared to grant the motion in limine on all issues except the defense of forgery. The court believes that [defense] was disclosed in the pretrial brief and was discussed, I believe, at the initial status [Scheduling] conference in the case. To the extent that the Debtor wants to put on proof that any of the loans were not executed by Ms. Hart or are not obligations of Ms. Hart, the court will hear testimony and evidence on that issue. Other than that, with respect to any set off or affirmative counterclaim that arises from actions that relate to Optimum,

  the court is going to exclude that as not being relevant to the issues [that have
  been raised] before the court today."

  After allowing the Debtor to proceed only on the defense of forgery, the Debtor's counsel informed the court that there was no issue with respect to the authenticity of the Debtor's signature on the guaranty, and that he did not have the handwriting expert available for trial that day.

  In its motion in limine, the Bank sought to have the Debtor's counterclaims cut off based on the language in her guaranty that she waived any defenses and would owe the entire amount even if Optimum mounted a successful defense. The court did not rule on the effect of that guaranty language based on the parties' argument the day of the trial. The Debtor had not raised any counterclaims and had mentioned only one defense which was not pursued.

  Debtor's counsel responded to the court's finding that (a) Optimum's defenses were not relevant to matters before the court and (b) nothing in the court's ruling on the dischargeability issue would affect Optimum or Optimum's ability to proceed in Chancery Court to raise whatever defenses or counterclaims it had. He stated that "Since your honor has now said that Optimum still has its counterclaim in Bradley County that basically that would allow Ms. Hart to raise the defenses that she might ultimately have against a collection on the guarantees." [Statement of Richard Banks, Hearing, April 6, 2011, 10:20 a.m.]. The court understood that statement to confirm that the Debtor had no counterclaims of her own and that she was relying on Optimum's reduction of its obligation to the Bank through the successful litigation of its counterclaims to reduce her obligations. The court's order specifically preserved that benefit for the Debtor.

**II.     Analysis**

**A.     The Bank has carried its burden of proof with respect to a mistake under Fed. R. Civ. P. 60.**

Rule 9024 of the Federal Rules of Bankruptcy Procedure incorporates Federal Rule of Civil Procedure 60 and makes that rule applicable to bankruptcy proceedings. Rule 60 provides that the court may relieve a party from an order for mistake. Fed. R. Civ. P. 60(b)(1). The motion to seek relief from that mistake must be filed with one year of the entry of the order. Fed. R. Civ. P. 60(c). The court finds the motion is timely. It is the movant's burden to show the existence of a mistake. *In re Gibson and Epps, L.L.C.*, 468 B.R. 279, 289 (Bankr. E.D. Tenn. 2012) (citing *McCurry ex rel. v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002)).

The mistake allegedly made by the court was the court's failure to enter a judgment. The Bank's proof is that it asked for a judgment in its complaint. The court made findings regarding the specific amounts owed to the Bank. By granting the Bank's motion in limine, the court limited the Debtor's defense to only forgery which the Debtor conceded was not applicable to her guaranty. As to counterclaims of her own, she never asserted any. Finally, the only action that would change the amount owed to the Bank was spelled out by the Court in its order, and that action involved a successful defense brought by Optimum.

The court's mistake in this case is difficult to address since the need for a judgment is prompted by the Debtor's desire to assert claims belonging to her, rather than to Optimum, which she has never articulated on her own behalf. Following the dischargeability trial, the court did not see that it needed to enter a judgment beyond its ruling on the motion in limine as to the Debtor. The Motion to Amend and the Debtor's response now seem to indicate that Debtor

9

desires to raise claims against the Bank on her own behalf which she never pled in either the Chancery Litigation or her bankruptcy case.

The only party that had raised a counterclaim in the Chancery Litigation was reportedly Optimum. The court addressed those claims in its memorandum opinion, "[t]he court ruled that she [the Debtor] could not present evidence of Optimum's claims because she had failed to raise them previously; however, the court also ruled that the court's decision on this motion was not intended to be a ruling on the merits of those claims." [Doc. No. 27, Memorandum at 3]. The court also found that "[t]o the extent that Optimum successfully maintain[ed] a defense or counterclaim which reduce[d] its debt, the Debtor's guaranty obligation would be accordingly reduced." *Id*. The relief the Bank seeks in the present motion to amend would still allow the Debtor's obligation to be reduced by any recovery obtained by Optimum.

The court, not wanting to preclude any defense or counterclaim which might be raised by Optimum, did not enter a judgment against the Debtor. The failure to enter a judgment was not intended to open a door that the Debtor had failed to open. To the extent the Debtor is trying to find a new path to raise new defenses, the court believed it had blocked that path as a result of its ruling on the motion in limine.

The court finds that the Bank has met its burden. The Debtor failed to assert counterclaims and affirmative defenses at the time of the trial. The court made specific findings as to the amount of the debts owed to the Bank and the status of those debts as nondischargeable. There is no reason for another court to spend its time and resources to make the same findings as to amounts. The judgment will continue to carve out Optimum's counterclaims, which, if successful, will directly benefit the Debtor.

**B.     Abstention is not appropriate in this case.**

With respect to the second issue raised by the Debtor, the court sees no reason to abstain. There is no basis for mandatory abstention since the Debtor has demonstrated no evidence that she had claims pending in state court prior to the filing of her bankruptcy petition. 28 U.S.C. §1334(c)(2). The court finds no basis for permissive abstention. An objection to discharge is a core matter. 28 U.S.C. §157(b)(I). To the extent that the Debtor has any defenses other than those of Optimum, she has not demonstrated that they arose from transactions other than those loans that were the subject of the nondischargeability complaint. The factors favoring permissive abstention are not present in this case. *Beneficial National Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Sys., Inc.),* 220 B.R. 932, 952 (Bankr. E.D. Tenn. 1998). Abstention would not assist in the efficient administration of this estate. There appears to be a likelihood of forum shopping given this court's ruling on the motion in limine and the lack of anything in the bankruptcy court's record regarding the specifics of her alleged claims. Given the Debtor's failure to provide the specifics of her counterclaims, the court is unable to determine whether the other factors would mitigate in favor of permissive abstention. To the extent that the issues relate to the claims of Optimum, the court has effectively abstained from hearing those matters and preserved the benefit of Optimum's success for the Debtor. The Debtor's issues should have been litigated between the two parties with respect to these four loan obligations. The findings on those issues were made, and a judgment should have been entered.

**C.     The Bank is not estopped from seeking relief from judgment because of additional Chancery Court complaints.**

With respect to the third basis for denying the motion to amend, the court does not find the Debtor's estoppel argument persuasive. The court has reviewed the two complaints filed by the Bank in Bradley County, Tennessee. One seeks a judgment for the Personal Loan. The other

11

seeks a judgment for the Daisy Loan. Both complaints reference the findings of this court as the basis for the relief which they seek. There appears to be no relief requested that would not have already been granted had this court entered a judgment. Further, if this court were to refuse to amend the judgment based on the existence of the Bank's efforts to obtain a judgment, the Debtor would be allowed to raise claims which she either did not raise or raised too late. Such a result would reward the Debtor for conduct which the court has already determined in its ruling on the motion in limine was prejudicial to the Bank and that should not be allowed.

Further, the court does not have a concern that the Bank is trying to obtain a judgment that would not have the qualification regarding the Optimum Loan. Neither lawsuit involves the Optimum Loan.

### D. This Court has jurisdiction to grant the relief requested.

With respect to the fourth basis for denying the motion, a court has authority to interpret and amend its own order. *In re Pioneer Inv. Services Co.*, No. 92-6090, __ F. A'ppx ___, 21 F.3d 428, at *2 (6th Cir. Apr. 14, 1994) (noting that "'[t]he power to interpret a prior judgment is within the inherent equitable powers of the Court issuing the judgment'") (quotation omitted)); *John Richards Homes Building Co., L.L.C. v. Adell (In re John Richards Homes Bldg. Co., L.L.C.)*, 404 B.R. 220, 225 (E.D. Mich. 2009) (noting that " 'bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case.'"); *see also, Williams v. Citifinancial Mortgage Co., f/k/a IMC Mortgage Co. (In re Williams)*, 256 B.R. 885, 892 (B.A.P. 8th Cir. 2001). The Debtor, after failing to raise her counterclaim, now opposes the relief requested on the basis that the court does not have jurisdiction to hear a counterclaim raised by the Debtor, relying on *Stern v. Marshall*. ___ U.S. ___, 131 S.Ct. 2594 (2011).

The court does not find that *Stern v. Marshall* is applicable in this situation. 131 S.Ct. 2594. The Debtor wants to pursue a claim against a creditor that was not raised in the Chancery Litigation nor raised as an affirmative defense in the dischargeability adversary proceeding. There is a question whether the claim belongs to the Debtor or her company. The nature of the claim and the identity of its owner are not clear from her schedules. Unlike the well litigated claims of Vickie Marshall, Ms. Hart has not provided the specifics of her claims against the Bank in any written form. The forgery defense was not pursued at trial, and there was no record of any other specific defenses which she had apart from defenses which Optimum might raise. To the extent that the counterclaims are those of Optimum, as the court was led to believe at the trial, the court's order and memorandum made clear that those claims were not before the court and the court did not rule on them. To the extent that Optimum's counterclaims are the basis of Ms. Hart's objection to the court's jurisdiction, the court specifically excepted Optimum's claims from its ruling. The amended order will continue to provide that the Debtor will have the benefit of any success Optimum may have in its litigation with the Bank. However, the court does not find that claims which have yet to be stated by this Debtor, despite the requirements of disclosure in her schedules and the necessity of raising affirmative defenses in the adversary proceeding, provide a basis for this court failing to correct a mistake and to clarify the intended effect of its ruling on the motion in limine.

### III.  Conclusion

With respect to the Personal Loan, the Daisy Loan and the Residence Loan, the court will enter a judgment in favor of the Bank. With respect to the Optimum Loan, the court will enter a judgment in favor of the Bank, subject to adjustment based on the outcome of the Chancery Litigation between the Bank and Optimum Staffing.

A separate order granting the Bank's Motion to Amend will be entered.

# # #